UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

DAVE'S CABINETS, INC.,

       Plaintiff,

v.                            **MEMORANDUM OF LAW & ORDER**
                               Civil File No. 05-854 (MJD/RLE)

KOMO MACHINE, INC., and
WENDELLS WOODWORK, INC.,
d/b/a Diversified Equipment &
Supply,

       Defendants.
_____

Christopher W. Harmoning, Gray Plant Mooty Mooty & Bennett, PA-SC, and Deborah A. Crinigan, White & Williams LLP, Counsel for Plaintiff Dave's Cabinets, Inc.

Kristi K. Warner and Robert D. Brownson, Brownson & Ballou, PLLP, Counsel for Defendant Komo Machine, Inc.

Brian A. Wood, Patrick J. Larkin, and Roseann J. Bour, Lind Jensen Sullivan & Peterson, PA, Counsel for Defendant Wendell's Woodwork, Inc.
_____

## I. INTRODUCTION

This matter is before the Court on Defendant Komo Machine, Inc.'s Motion for Summary Judgment. [Docket No. 37] The Court heard oral argument on May 24, 2006.

1

## II.   BACKGROUND

### 1.   Factual Background

#### a.   The Parties

Plaintiff Dave's Cabinets, Inc., is a business that builds cabinetry, molding, and other architectural woodworking products. Its customers are building contractors. Defendant Komo Machine, Inc., designs, manufactures, and sells wood processing equipment. Defendant Wendell's Woodwork, Inc., d/b/a Diversified Equipment & Supply ("Diversified") is an exclusive distributor of Komo's products that is certified to train people and service those products.

This lawsuit centers around a Komo-manufactured VR 620 Mach III CC Computer Numerically Controlled (CNC) Machining Center ("Mach III"). The Mach III was a router with macro capability, working at three times the speed of other routers. It could cost from $175,000 to $950,000, depending on the options that the buyer chose.

#### b.   Contract Formation

David Boone, Dave's Cabinets vice president and fifty-percent owner, negotiated the sale of the Mach III. Boone first received the quote on the Mach III on approximately March 22, 2002. Boone negotiated the particular options for the Mach III with Wendell Long, Diversified's owner, and further terms of the deal were negotiated by fax. The quotation was revised on March 27, April 11, and

April 15, 2002.

The machine was a custom machine, and Boone negotiated multiple provisions of the quote, such as specifying the brand of vacuum pumps to be used. In his own handwriting, Boone added certain provisions to the quote. He was "highly involved in the detail of . . . the purchase of the equipment." (Boone Dep. 50.)

### c.     The Contract

The final version of the quote ("Quotation") contains multiple handwritten changes and is signed by Boone, on behalf of Dave's Cabinets, on pages six and seven. The first six pages of the contract bear a letterhead stating "Komo Routers." The seventh page bears a letterhead stating "Komo: Komo Machine, Inc." Page six contains a signature line stating "Offered By: . . . Barry A. Gamber, Director of Sales, Komo Machine, Inc." However, that signature line is blank. John Daniel, who was then a Diversified employee, signed page seven. Page seven is labeled "Terms and Conditions" and contains seventeen provisions such as the payment terms, delivery terms, cancellation terms, the warranty, a choice of law provision, and the exclusion of damages clause. All terms are in the same small size print. Term four, the payment term, has been edited in handwriting to change the down payment requirement from twenty percent to ten percent.

Term thirteen states:

> 13. Exclusion of Damages: The Company shall not, in any event, be liable for any incidental or consequential damages.

### d.     Participation in the Contract

According to Boone, both Komo and Diversified personnel were involved in the sale of the Mach III.  Some portions of the final Mach III product were provided by Komo, such as the machine itself and a line drill upgrade, while other items, such as the diamond tooling package, were provided by Diversified.  Both Komo and Diversified personnel were involved in the installation of the Mach III.  Diversified submitted the bill for the Mach III to Dave's Cabinets.  In his deposition, Komo product manager Jeff Erickson opined that Diversified bought the Mach III from Komo and then resold it to Dave's Cabinets, so there was no agreement between Dave's Cabinets and Komo for the sale of the Mach III; however, this alleged arrangement is not indicated within the Quotation or any other document provided to the Court.

### e.     The Fire

On January 21, 2003, a fire occurred at Dave's Cabinets.  Plaintiff alleges that this fire was caused by defects in the Mach III and by negligent installation.  It also alleges that the Mach III was defective due to the omission of any warnings, labels, operating guides, or instructions regarding fire hazards.  Dave's Cabinets claims that the fire cause the following damages:

$317,640.44         Real Property – Building Structure Damage

| | |
|---|---|
| $242,148.80 | Other Business Machinery & Equipment Damage |
| $24,358.00 | Business Interruption/Lost Profits |
| $4,547.92 | Extra Expenses |
| $588,695.16 | **TOTAL** |

Plaintiff represents that none of these claimed damages are for damage to the Mach III itself; Komo repaired the Mach III at no cost to Plaintiff.

### 2.  Procedural Background

On April 29, 2005, Dave's Cabinets filed a Complaint against Komo Machine and Wendell's Woodwork, Inc. doing business as Diversified Equipment & Supply in this Court.  Dave's Cabinets alleged Count I, negligence, Count II, breach of express warranty, Count III, strict liability, and Count IV, breach of contract, against Komo Machine.  It alleged Count V, negligence, Count VI, strict liability, and Count VII, third party beneficiary breach of contract, against Diversified.  Komo Machine now moves for summary judgment on all claims against it.

## III.  DISCUSSION

### A.  Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The party seeking

5

summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

The parties agree that Minnesota law applies to this case, and the choice of law clause in the Quotation states that the "agreement shall be construed and enforced according to the laws of the state of Minnesota." (Quotation ¶ 17.) A court sitting in diversity applies the choice of law requirements of the forum state, and "Minnesota generally recognizes choice of law clauses." Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1392-93 (8th Cir. 1997) (citation omitted).

**B.   Contract Terms**

**1.   Whether the Quotation Constitutes a Contract**

The Quotation constitutes a valid contract because it was "sufficiently detailed and indicated that acceptance was all that was needed to ripen the offer into a contract," and "manifested a clear, definite and explicit offer of sale." White Consol. Indus., Inc. v. McGill Mfg. Co., Inc., 165 F.3d 1185, 1190 (8th Cir. 1999) (citations omitted) (analyzing Minnesota law). In this case, the Quotation was detailed. It listed all of the Mach III's features, the price of the machine, and the terms and conditions of the sale. Dave's Cabinets agreed to bound by its terms: it

twice signed the Quotation, once under the phrase "Accepted By." Thus, the Quotation is a valid contract.

### 2.    Whether Komo Was a Party to the Quotation Contract

Dave's Cabinets argues that the contract was vague regarding whether Komo was a party to it, and, if so, what its obligations under the contract were. It notes that Komo's product manager testified that Diversified, not Komo, sold the Mach III to Dave's Cabinets. However, Dave's Cabinets' Complaint explicitly alleges that it signed a contract with Komo, not Diversified. (Complaint ¶ 10.)

"The interpretation of a contract is a question of law for the court to decide." White Consol. Indus., Inc. v. McGill Mfg. Co., Inc., 165 F.3d 1185, 1190 (8th Cir. 1999). Despite the contradictory testimony of Komo's product manager, every page of the quotation bears Komo's letterhead. Under Minnesota law, a contract is "signed" when a party uses "any symbol executed or adopted with present intention to adopt or accept a writing." Minn. Stat. § 336.1-201, subd. b(37). That symbol "may be on any part of the document and in appropriate cases may be found in a billhead or letterhead." Id. U.C.C. cmt. (emphasis added).

The Quotation mentions Diversified only once, when it states that "Three (3) Days On-Site or at Diversified Advanced Applications Assistance to be schedule [sic] after machine installation." (Quotation 5.) It mentions training at Komo

multiple times. (Id. 4-5.) More importantly, it states, "All orders are subject to . . . Komo Machine Incorporated Standard Terms and Conditions." (Id. 6.) The following page, which includes the damages exclusion, is entitled "Terms and Conditions." (Id. 7.) This final page also states "No orders shall be deemed to be accepted by Komo, unless accepted in writing by the Company." (Id. 7 ¶ 1.) Although the Quotation does not define "the Company," in the context of that sentence, "the Company" means "Komo." Throughout the rest of the Terms and Conditions sheet, the term "the Company" is used for the seller, including in the damages exclusion clause.

When contract language is unambiguous, extrinsic evidence cannot be considered in order to create ambiguity. Hous. & Redevelopment Auth. of Chisholm v. Norman, 696 N.W.2d 329, 337 (Minn. 2005). Based on the content of the Quotation, including Komo's letterhead, the mention of the Komo Terms and Conditions, and the clear intent that "the Company" refers to Komo, the Court concludes that the contract embodied in the Quotation applies to Komo. Because the Quotation unambiguously applies to Komo, the Court does not consider extrinsic evidence, such as the testimony of Komo's product manager, in reaching its conclusion.

### 3. Whether Komo Provided Goods or Services

Plaintiff also argues that the Quotation, and its damages exclusion, do not

apply to installation of the Mach III or training related to the Mach III.  The Court rejects this argument.  The Quotation specifically includes installation and training.  Thus, the Quotation unambiguously encompassed Komo's installation and training services, and the Quotation's damages exclusion encompasses all of Komo's services.  Despite the inclusion of training and installation services in the Quotation, the predominate purpose of the Quotation was the sale of goods; thus, it is a contract for the sale of goods, governed by Uniform Commercial Code. Valley Farmers' Elevator v. Lindsay Bros. Co., 398 N.W.2d 553, 556 (Minn. 1987), overruled on other grounds by Hapka v. Paquin Farms, 458 N.W.2d 683 (Minn. 1990).

    **C.**    **Whether the Exclusion of Consequential Damages Was Unconscionable**

        **1.**    **Introduction**

Under the Uniform Commercial Code,

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.  Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Minn. Stat. § 336.2-719, subd. 3.  The question of unconscionability is determined by the Court.  Minn. Stat. § 336.2-302, cmt. 3.

    "An exclusion of consequential damages set forth in advance in a commercial agreement between experienced business parties represents a

bargained-for allocation of risk that is conscionable as a matter of law." <u>Transport Corp. of Am. v. Int'l Bus. Mach. Inc.</u>, 30 F.3d 953, 960 (8th Cir. 1994) (applying Minnesota law).  <u>See also</u> <u>Int'l Fin. Servs., Inc. v. Franz</u>, 534 N.W.2d 261, 269 (Minn. 1995) (holding that a consequential damages exclusion is not unconscionable when "the parties were both merchants and there was no great disparity in their bargaining strength and where the claim is for commercial loss").

The sale of the Mach III was a commercial transaction, and Komo is a sophisticated party.  The parties dispute, however, whether Dave's Cabinet is a sophisticated party with comparable bargaining strength.

### 2.     Whether Plaintiff Was a Sophisticated Party

Dave's Cabinets has existed since 1980.  Its business comprises multiple buildings and totals approximately 100,000 square feet.  It possesses over fifty woodworking machines and produces a catalog from which its customers, contractors, can order.  Dave's Cabinets has its own trucks that it uses to ship its woodworking products to its customers.

Boone, Dave's Cabinets' vice president and co-owner, has worked in the woodworking industry for at least fifteen years and supervises almost all manufacturing at Dave's Cabinets.  He made the decision to purchase the Mach III.  During his time with Dave's Cabinets he has purchased between twelve and fifteen Computer Numerically Controlled machines from several different vendors.

Boone made changes to the Quotation as the parties negotiated and stated that he was "highly involved in the detail of the . . . purchase of the equipment."

The Court concludes that Dave's Cabinets is a sophisticated party. Although it had never purchased this particular machine before, it is an established woodworking business that had previously purchased at least a dozen similar, large, industrial woodworking machines for commercial use. The particular Dave's Cabinets representative who negotiated the purchase of the Mach III, Boone, had previously negotiated the purchase of at least twelve similar machines. Even an individual buyer can be considered sophisticated if he has purchased the same item multiple times. See Anderson v. Newmar Corp., 319 F. Supp. 2d 943, 949 (D. Minn. 2004) (holding that buyer of motor home was sophisticated when, although he was not a commercial entity, he had "purchased no fewer than five motor homes and describes himself as an expert in motor homes").

Furthermore, there was substantially equal bargaining power between Komo and Dave's Cabinets. The parties extensively negotiated this contract. Dave's Cabinets made its own handwritten changes to the contract. Multiple versions of the contract were exchanged before Dave's Cabinets signed the final version. This evidence conclusively demonstrates that Dave's Cabinets was a substantially equal negotiator in the contract. Because Dave's Cabinet was a sophisticated party with comparable bargaining strength, the damages exclusion

was not unconscionable.

### 3. Whether the Risk of Fire Damage Was Contemplated by the Parties

Dave's Cabinets also argues that the damages exclusion is unenforceable because neither Komo nor Diversified mentioned risk allocation or the potential for the Mach III to cause a fire. Thus, it asserts that there was no bargained-for allocation of risk of fire.

Although it is uncontested that the parties did not specifically discuss the risk of fire, the conscionable, clear, general consequential damages exclusion clause is enforceable under Minnesota law. See, e.g., Int'l Fin. Servs., Inc. v. Franz, 534 N.W.2d 261, 265, 269 (Minn. 1995) (enforcing general, non-specific damages exclusion that excluded "consequential and/or special damages arising out of or in connection with the use or operation of the equipment sold or leased by this Agreement").

### 4. Font Size

Dave's Cabinets further argues that the damages exclusion is unenforceable because it was not emphasized in the contract and was written in overly small font. Although the exclusion does appear in fine print, it is not unreadable. Cf. McCarthy Well Co., Inc., v. St. Peter Creamery, Inc., 410 N.W.2d 312, 315-16, 316 n.2 (Minn. 1987) (holding that exculpatory clause was unreadable when it appeared in three-point font, one-half the size of the font in classified ads, printed

on dark paper, "in the middle of this impenetrable text" on the back of the contract, with no room for amendments, such that reading it would be "physically painful").

The damages exclusion was a short sentence, written in plain and unambiguous language. Although the font was small, it was the same size font as every other term and condition on page seven. Dave's Cabinets signed separately for page seven and all of the type on page seven was the same small size. Finally, the damages exclusion was set apart in a separate paragraph number and in a short, clear sentence. The fact that handwritten revisions to the payment terms were made on that page demonstrates that the small print was readable, understandable, and capable of being edited. The Court concludes that the consequential damages exclusion was readable.

Because the consequential damages exclusion was not unconscionable and was readable, it is enforceable against Dave's Cabinets. The Court must next determine whether the damages that Dave's Cabinets seeks are barred by this exclusion.

### D.     Whether Plaintiff's Damages Are Consequential

Komo asserts that all of the damages that Plaintiff seeks to recover are consequential, and thus, are barred by the contract. Plaintiff disagrees, arguing that even if the damages exclusion applies, the Court should deny summary

judgment as to the $24,358.00 for business interruption/lost profit damages and the $4,547.92 in extra expenses.  (Pl.'s Mem. of Law in Supp. of Its Opp'n at 13-14.)  The Quotation excludes both consequential and incidental damages.

> Minnesota law provides:
>
> (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
>
> (2) Consequential damages resulting from the seller's breach include
>
> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>
> (b) injury to person or property proximately resulting from any breach of warranty.

Minn. Stat. § 336.2-715.

> Consequential damages, as opposed to direct damages . . . [are] those that 'do not arise directly according to the usual course of things from the breach of the contract itself, but are rather those which are the consequence of special circumstances known to or reasonably supposed to have been contemplated by the parties when the contract was made.'  Direct damages  . . . arise out of the breach itself; consequential damages [are] damages foreseeably resulting from the breach.

Kleven v. Geigy Agric. Chems., 227 N.W.2d 566, 569 (Minn. 1975) (citations omitted).

Dave's Cabinets requests four categories of damages: "Real Property – Building Structure Damage," "Other Business Machinery & Equipment Damage," "Business Interruption/Lost Profits," and "Extra Expenses."  (Boone Aff. ¶ 7.)  (See also Complaint ¶¶ 21, 26, 30, 39 (seeking recovery of "damage to its real property and other business personal property, incurred extra expenses, business interruption losses, lost profits, and other incidental and consequential damages").)  Plaintiff explicitly provides that it claims no damages for damage to the Mach III itself; the Mach III was repaired by Komo "immediately after the fire" at no charge to Plaintiff.  (Boone Aff. ¶ 8.)

The fire damage to the real property and to the other business machinery and equipment is included in the category of consequential damages because it damage to other property allegedly caused by a product defect.  Minn. Stat. § 336.2-715, subd. 2(b) ("Consequential damages resulting from the seller's breach include . . . injury to . . . property proximately resulting from any breach of warranty.").

The business interruption damages and lost profits are also consequential damages.  Dave's Cabinets claims that "[t]he majority of the business interruption loss is attributable to the sales lost while repairing [its] facility and all of [its] business equipment."  (Boone Aff. ¶ 13.)  Lost profits and business interruption damages caused by loss of use of the building and other equipment due to the fire

15

damage are consequential damages.  See, e.g., W. Nat'l Mut. Ins. Co. v. Frost Paint & Oil Corp., No. C3-97-1118, 1998 WL 27247, at *2 (Minn. Ct. App. Jan. 27, 1998) (unpublished) (denoting "lost profits flowing from physical injury to its trailers, which were caused by . . . defective paint" as consequential damages).  Plaintiff represents that the Mach III was repaired "immediately," but even if Dave's Cabinets lost profits due to damage to the Mach III itself, those damages would also be consequential damages.  See, e.g., Transport Corp. of Am., Inc. v. Int'l Bus. Machs. Corp., 30 F.3d 953, 960 (8th Cir. 1994) (holding that damages for "for business interruption losses" to trucking company caused by computer disk drive failure were consequential damages).

As Dave's Cabinets represented at oral argument, the extra expenses of $4,547.92 did not flow from the loss of the Mach III itself.  Instead, they resulted from the damage to the building structure and other business personal property.  Thus, these "extra expenses" also constitute consequential damages.

## IV.   CONCLUSION

The Court grants Komo's motion for summary judgment.  The Quotation is a valid contract for the sale of goods that governs Dave's Cabinets' claims against Komo.  Dave's Cabinets was a sophisticated buyer; there was not a large discrepancy in bargaining power between Dave's Cabinets and Komo; and they negotiated the terms of this contract.  The damages exclusion is conscionable and

enforceable. All four categories of damages claimed by Plaintiff are consequential and are barred by the damages exclusion.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

Defendant Komo Machine, Inc.'s Motion for Summary Judgment [Docket No. 37] is **GRANTED**.

Dated: July 6, 2006                             s / Michael J. Davis
                                                Judge Michael J. Davis
                                                United States District Court